Filed 11/21/24  P. v. Mattox CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, | B328038 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. KA082178) |
| v. | |
| CLAUDE DAVE MATTOX, JR., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Juan Carlos Dominguez, Judge.  Affirmed.

Mi Kim, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Taylor Nguyen and Louis W. Karlin, Deputy Attorneys General, for Plaintiff and Respondent.

———————————————

# INTRODUCTION

Claude Dave Mattox, Jr., appeals from the superior court's order recalling his sentence and resentencing him pursuant to Penal Code section 1172.1 (former section 1170.03).[1] Section 1172.1 permits the superior court to recall a previously imposed sentence on its own motion or upon recommendation by the Secretary of the Department of Corrections and Rehabilitation (CDCR), among other agencies. CDCR recommended the superior court recall and resentence Mattox based on changes in the law authorizing courts to dismiss sentencing enhancements. The superior court recalled the sentence, dismissed three sentencing enhancements pursuant to section 1385 (lowering Mattox's sentence by 15 years), and resentenced Mattox to 25 years to life as a third strike offender.

Mattox asserts the superior court did not understand it also had the discretion to dismiss his prior strikes imposed under the Three Strikes law and to resentence him as a second strike offender. Mattox contends the court abused its discretion and violated his due process rights. We conclude the sentencing court did not abuse its discretion and affirm.

---

[1] All further undesignated references are to the Penal Code. Effective June 30, 2022, "[t]he Legislature . . . renumbered section 1170.03 to section 1172.1, but made no substantive changes." (*People v. Salgado* (2022) 82 Cal.App.5th 376, 378, fn. 2; accord, *People v. Braggs* (2022) 85 Cal.App.5th 809, 818.) We refer to the current version of the statute in this opinion.

## FACTUAL AND PROCEDURAL BACKGROUND

A.    *The Underlying Offense²*

In February 2008, Candace Roy, Mattox's stepsister, showed two prospective renters an apartment in a converted garage in her backyard.  Mattox was in the apartment.  Mattox had previously entered the apartment to do repair work but was not authorized to enter it on this occasion.  Roy noticed she was missing a key while preparing to show the apartment, and when Mattox exited, he gave Roy the missing key.  He also handed Roy three rings.  The existing tenant subsequently confirmed the rings belonged to the tenant.  The tenant said it looked like someone had gone through her things in the apartment.

Mattox was tried by jury.  The jury found Mattox guilty of first degree burglary in violation of section 459.  Mattox admitted the following 10 prior serious or violent felony convictions:  in 1980, he was convicted of four counts of robbery (§ 211) and one count of attempted robbery (§§ 211, 664); in 1981, he was convicted of two counts of robbery (§ 211); in 1987, he was convicted of two counts of kidnapping (§ 207) and one count of robbery of a person using an automated teller machine (§ 212.5, subd. (b)).  (§§ 667, subd. (b)-(i), 1170.12.)

Before sentencing, Mattox filed a motion under *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 (*Romero*) to dismiss his prior convictions.  He acknowledged his extensive criminal history but asserted his prior convictions occurred over 20 years before the current conviction and were due to his alcohol

---

² The facts of the underlying offense are summarized from our previous opinion affirming the judgment of conviction.  (See *People v. Mattox* (Mar. 30, 2010, B213001) [nonpub. opn.].)

and drug abuse. Although he remained sober after his release from prison, he relapsed and was intoxicated when he went to the apartment. He asserted he did not intend to commit any crimes at the apartment that day.

At sentencing, the superior court initially stated it was inclined to sentence Mattox as a second strike offender. The prosecutor advised the court that Mattox had 10 strikes for each of the 10 separate convictions he admitted, and the court would need to strike nine of the 10 strikes to sentence Mattox as a second strike offender. After reviewing the prior convictions, the court determined it would be an abuse of discretion to strike nine of the priors because they were "just too numerous and too serious." The superior court sentenced Mattox to an indeterminate term of 25 years to life for the third strike burglary count, plus a determinate term of 15 years (five years each) for three prior serious felony convictions.

B.    *CDCR's Recommendation for Resentencing*

In February 2022, CDCR sent a letter to the superior court recommending the court reconsider and recall Mattox's sentence as authorized by former section 1170.03 (now section 1172.1) based on a change in sentencing law. CDCR highlighted the superior court's new authority not to impose a consecutive enhancement for prior convictions pursuant to section 667, subdivision (a)(1), and recommended Mattox be resentenced in accordance with section 1172.1.

CDCR attached a cumulative case summary and evaluation report describing Mattox's criminal history and conduct in prison. The report noted that in addition to the 10 prior serious or violent felony convictions he admitted to in 2008, he was also convicted

4

of involuntary manslaughter in 1979 and possession of a deadly weapon by a prisoner in 1980.

While incarcerated, Mattox completed two semesters of college courses and was in the process of earning an Associate Degree in Arts. He completed additional vocational and educational certification from CDCR. He also received satisfactory or above satisfactory marks for his performance in various jobs. He was noted as a "dependable" worker during the COVID-19 pandemic who "stepped up and responded by assisting in disinfecting the dayroom, and any work environment." Since his incarceration in 2008, he had only one rule violation in 2009 for fighting.

On August 9, 2022, the court indicated it was prepared to strike two of the five-year prior conviction enhancements and that it intended to resentence Mattox to 25 years to life plus one five-year enhancement.[3] Defense counsel asked for a continuance to provide mitigating evidence and discuss the issue with the prosecution. The court granted the continuance.

On September 26, 2022, the superior court again stated its intent to strike two of the five-year prior conviction enhancements but keep one in place because "[t]hat's what the Department of Corrections has asked me to do. They have not asked anything else. However, this is a full resentencing—and if any counsel want more . . . ." Defense counsel responded she did "want more" and requested additional time to present her case

---

[3] Section 1385, subdivision (c)(2)(B), directs the court to "consider and afford great weight" to whether multiple enhancements are alleged in a single case. It further provides: "In this instance, all enhancements beyond a single enhancement shall be dismissed." (§ 1385, subd. (c)(2)(B).)

5

and persuade the prosecution to join in her resentencing recommendation. The prosecutor advised the court she had authorization to recommend striking all three of the five-year prior conviction enhancements but that defense counsel sought additional relief. The court granted the request for a continuance, stating that any recommendation by the prosecution would be appreciated but that it would exercise its own discretion in resentencing Mattox.

On November 8, 2022, Mattox submitted a memorandum joining in CDCR's recommendation for recall and resentencing, arguing he was entitled to a full resentencing. He requested the superior court resentence him as a second strike offender or, in the alternative, strike the three five-year enhancements. In support, Mattox submitted a resentencing report from the Independent Defender Program of the Los Angeles County Bar Association describing his traumatic childhood, history of alcoholism and drug use, the mitigating information regarding his prior criminal history and in the underlying case, and the positive prison programming he received. He also set out a proposed reentry plan with support from his family and community.

The resentencing report discussed Mattox's traumatic childhood, including (1) physical abuse by his father as a young child, (2) sexual molestation by older neighborhood girls at the age of six or seven, (3) witnessing a drunk driver run over his best friend at the age of nine, (4) bullying by teachers in the fifth and sixth grades and his expulsion from school in 10th grade, (5) a minor car accident which resulted in the other car's occupants stabbing and beating then 13-year-old Mattox and his uncle, and (6) his parents' minimizing and ignoring his struggles

6

by comparing him to the severely disabled foster children they had taken into their home.

The resentencing report also set out mitigating information regarding Mattox's prior criminal history. In 1979, Mattox was convicted of the involuntary manslaughter of the woman who was carrying his child. Mattox was 21 years old and using drugs with the woman. Mattox's father died from a heart attack soon after Mattox's first arrest, and Mattox believed his actions caused the heart attack. "[D]evastated by what happened, [he] went on a crime spree," resulting in a seven-year prison sentence for manslaughter, robbery, and attempted robbery. While in prison, the guards abused Mattox, and another inmate stabbed him 16 times and attempted to cut his throat. After his release from prison in 1999, Mattox tried to change his life for his children. He remained sober and was gainfully employed until his relapse in 2008, but he failed to address his previous trauma. After his arrest in 2008, Mattox participated in and graduated from a program that provided him with the tools to "earn redemption and make amends for all of the pain and suffering I caused to my victims and to my own family."

On December 20, 2022, the superior court recalled the sentence and struck all three of the five-year enhancements, resentencing Mattox to 25 years to life in state prison as a third strike offender. At the hearing, defense counsel indicated the court had been persuaded by the parties' previous arguments at a November 10, 2022 hearing, but that resentencing was continued to December 20 to ensure Mattox's presence.[4] The court and the

---

[4] Mattox was not present at the November 10 hearing and there is no reporter's transcript in the appellate record for that

7

prosecutor affirmed defense counsel's characterization of the November 10 hearing.

At the time of the resentencing, Mattox was approximately 65 years old and had served over 15 years in prison.

Mattox timely appealed.

## DISCUSSION

Mattox contends the superior court did not understand it had the discretion to strike his prior convictions under section 1172.1 and believed its discretion was limited by CDCR's recommendation that the court only dismiss the sentencing enhancements. In his view, the court failed to conduct a full resentencing as required under section 1172.1 and failed to state its reasons for refusing to strike any prior convictions. Mattox also contends the court abused its discretion and violated his due process rights when it declined to sentence him as a second strike offender.

A.    *Standard of Review and Sentencing Discretion*

We review the superior court's resentencing decision for abuse of discretion. (See *People v. E.M.* (2022) 85 Cal.App.5th 1075, 1082; *People v. Frazier* (2020) 55 Cal.App.5th 858, 863 (*Frazier*).) Under this deferential standard of review, ""[t]he burden is on the party attacking the sentence to clearly show that

_____

hearing. A minute order noted Mattox's absence from the hearing and confirmed the parties and the court "confer[red] re: the status of the re-sentencing in this matter." Mattox does not raise any argument relating to his absence from the November 10 hearing.

8

the sentencing decision was irrational or arbitrary.""" (*People v. Carmony* (2004) 33 Cal.4th 367, 376 (*Carmony*).)

"'Defendants are entitled to sentencing decisions made in the exercise of the "informed discretion" of the sentencing court. [Citations.] A court which is unaware of the scope of its discretionary powers can no more exercise that "informed discretion" than one whose sentence is or may have been based on misinformation regarding a material aspect of a defendant's record.' [Citation.] In such circumstances, we have held that the appropriate remedy is to remand for resentencing unless the record 'clearly indicate[s]' that the trial court would have reached the same conclusion 'even if it had been aware that it had such discretion.'" (*People v. Gutierrez* (2014) 58 Cal.4th 1354, 1391 (*Gutierrez*); accord, *People v. Salazar* (2023) 15 Cal.5th 416, 424.) Unless the record establishes on its face that the trial court misunderstood the scope of its discretion, we may not presume error on a silent record. We instead presume the trial court was aware of the applicable law, including its statutory discretion at sentencing. (See *Gutierrez*, at p. 1391.)

B.      *Resentencing Under Section 1172.1*

"When a defendant, upon conviction for a felony offense, has been committed to the custody of the Secretary of the [CDCR] . . . , the court may . . . at any time upon the recommendation of the secretary . . . recall the sentence and commitment previously ordered and resentence the defendant in the same manner as if they had not previously been sentenced, . . . provided the new sentence, if any, is no greater than the initial sentence." (§ 1172.1, subd. (a)(1).) CDCR's recommendation "furnishes the court with jurisdiction it would not otherwise have to recall and

9

resentence and is 'an invitation to the court to exercise its equitable jurisdiction.'" (*People v. McMurray* (2022) 76 Cal.App.5th 1035, 1040.)

If CDCR makes a recommendation for resentencing under section 1172.1, "[t]here shall be a presumption favoring recall and resentencing of the defendant, which may only be overcome if a court finds the defendant currently poses an unreasonable risk of danger to public safety, as defined in subdivision (c) of [s]ection 1170.18." (§ 1172.1, subd. (b)(2).)

"In recalling and resentencing pursuant to this provision, the court shall consider postconviction factors, including, but not limited to, the disciplinary record and record of rehabilitation of the defendant while incarcerated, evidence that reflects whether age, time served, and diminished physical condition, if any, have reduced the defendant's risk for future violence, and evidence that reflects that circumstances have changed since the original sentencing so that continued incarceration is no longer in the interest of justice. Evidence that the defendant's incarceration is no longer in the interest of justice includes, but is not limited to, evidence that the defendant's constitutional rights were violated in the proceedings related to the conviction or sentence at issue, and any other evidence that undermines the integrity of the underlying conviction or sentence. The court shall consider if the defendant has experienced psychological, physical, or childhood trauma, including, but not limited to, abuse, neglect, exploitation, or sexual violence." (§ 1172.1, subd. (a)(5).)

C.    *Dismissal of Sentencing Enhancements Under Section 1385*

Section 1172.1 also directs the superior court to "apply any changes in law that reduce sentences or provide for judicial

10

discretion." (§1172.1, subd. (a)(2).)  As relevant here, the Legislature amended sections 667 and 1385 to allow a court to strike a prior serious felony enhancement, such as the section 667 sentencing enhancements imposed upon Mattox.  (See Stats. 2018, ch. 1013, §§ 1-2; *People v. Garcia* (2018) 28 Cal.App.5th 961, 971.)  Section 1385, subdivision (c)(1), provides that the court "shall dismiss an enhancement if it is in the furtherance of justice to do so."  Subdivision (c)(2) of that section additionally directs the court to "consider and afford great weight to evidence offered by the defendant to prove that any of the mitigating circumstances in subparagraphs (A) to (I) are present.  Proof of the presence of one or more of these circumstances weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety."  The mitigating circumstances include, as relevant here:  applying the enhancement would result in a discriminatory racial impact; multiple enhancements are alleged in a single case; applying an enhancement could result in a sentence of over 20 years; the current offense is connected to mental illness; the current offense is connected to prior victimization or childhood trauma; the current offense is not a violent felony as defined in subdivision (c) of section 667.5; and the enhancement is based on a prior conviction that is over five years old.

D.    *The Record Demonstrates the Superior Court Understood the Scope of its Discretion*

There is no dispute section 1172.1 authorized the superior court to resentence Mattox "in the same manner as if [Mattox] had not previously been sentenced" and to "apply any changes in

11

law that reduce sentences." (§ 1172.1, subd. (a)(1)-(2).) The superior court had the discretion under section 1172.1 to dismiss any or all of Mattox's sentencing enhancements under section 1385 and strike his prior convictions under the Three Strikes law.

The record before us amply demonstrates the superior court was aware of the full extent of its discretion. The superior court was initially inclined to strike only two of the prior conviction enhancements, but it acknowledged Mattox was entitled to a "full resentencing" and asked "if any counsel want[ed] more" relief than it had indicated. Defense counsel replied she did want "more" relief than what the court had indicated and what the prosecutor had offered. The prosecutor affirmed she had authority to recommend the court strike all three of the enhancements, but she indicated defense counsel wanted more relief than what she could offer. It is reasonable to infer from this exchange that the court was aware Mattox sought to strike one or more prior convictions since that was the only relief available other than dismissal of the three sentencing enhancements.

Mattox then confirmed this was the relief he sought when he filed a 12-page memorandum expressly asking the court to resentence him as a second strike offender or, in the alternative, to dismiss all three of the five-year enhancements. The memorandum presented legal arguments why Mattox was entitled to such relief, and his accompanying exhibits presented evidence regarding various postconviction factors, changed circumstances, and trauma as outlined in section 1172.1, subdivision (a). Two days after he filed his memorandum,

12

counsel appeared before the court for argument at the November 10 hearing.

At the December 20 resentencing hearing, the court partially granted Mattox's request and struck all three of the five-year enhancements rather than the two initially indicated. Mattox's counsel stated on the record that the parties had presented argument on November 10, the court expressed its willingness to strike all three enhancements, and the hearing was continued to ensure Mattox's presence at resentencing.[5] These circumstances demonstrate the superior court understood the full extent of its discretion to resentence Mattox under section 1172.1, including the potential to sentence him as a second strike offender.

Even if the record was silent and did not affirmatively demonstrate the court exercised its informed discretion, we presume the court properly exercised its discretion. (See *In re Large* (2007) 41 Cal.4th 538, 551 ["'strong presumption'" that the trial judge properly exercised his discretion in refusing to strike a prior conviction allegation]; *Frazier, supra,* 55 Cal.App.5th at p. 868 ["It is a fundamental tenet of appellate review that we presume on a silent record the court properly exercised its discretion."].)

---

[5] Although there is no transcript of the November 10 hearing, the prosecutor and the court confirmed defense counsel's characterization of the hearing. Mattox does not argue he was prejudiced by the lack of a transcript for that hearing. (See *People v. Clark* (2016) 63 Cal.4th 522, 569 [defendant is entitled to a record on appeal that is adequate to permit meaningful review but has the burden to show prejudice resulting from an inadequate record].)

We are not persuaded by Mattox's contrary reading of the record. He argues the record affirmatively shows the superior court misunderstood its discretion to fully resentence Mattox, or that these same facts create an ambiguity as to the court's understanding of its discretion.

Mattox focuses on a single comment by the court at the September 26, 2022 hearing: "I indicated to strike two [sentencing enhancements]. I would keep one in place. That's what the Department of Corrections has asked me to do. They have not asked anything else." According to Mattox, this demonstrates the court did not understand it could conduct a full resentencing and vacate his third strike. But nothing in the record demonstrates the court believed it was limited by CDCR's recommendation. The court's statement that CDCR only asked for dismissal of two of the three sentencing enhancements is an accurate description of CDCR's recommendation. The court, however, does not indicate it is limited by that recommendation. Indeed, immediately thereafter, the court acknowledged it was required to conduct "a full resentencing" and the parties then, by their statements summarized above, acknowledged that Mattox sought to be sentenced as a second strike offender. The court further emphasized its discretion when it explained it would "appreciate a recommendation [from] the D.A.'s office," but it would not be anything more than a recommendation. The record demonstrates the superior court did not believe it was bound by CDCR's recommendation.

The statement Mattox relies on also came two months before Mattox submitted his memorandum asking the court to sentence him as a second strike offender (or to strike all his enhancements), which defense counsel stated she was preparing

14

at the September 26, 2022 hearing.  The superior court's statement, examined in context, does not affirmatively demonstrate the court misunderstood its discretion to strike Mattox's prior convictions.

Indeed, the law is clear the court was not bound by CDCR's recommendation.  (See *People v. Braggs* (2022) 85 Cal.App.5th 809, 816 [resentencing statute provides no presumption in favor of CDCR's particular recommendation].)  Further, CDCR made no representation that the court's discretion was limited to its recommendation.  CDCR instead concluded its letter by asking the court to resentence Mattox according to section 1172.1, which authorizes the court to "resentence the defendant in the same manner as if they [*sic*] had not previously been sentenced."  (§ 1172.1, subd. (a)(1).)  We presume the superior court was aware of and followed the applicable law.  (See *People v. Stowell* (2003) 31 Cal.4th 1107, 1114; *People v. Barber* (2020) 55 Cal.App.5th 787, 814; Evid. Code, § 664.)

Nor are we persuaded that the court's failure to state its reasons for its sentence, as required by sections 1172.1 and 1385, at the December 20 hearing, affirmatively demonstrates it misunderstood the scope of its discretion.[6]  In particular, Mattox argues the court failed to mention any of the mitigating factors

---

[6]     Section 1172.1, subdivision (a)(7), requires the court to "state on the record the reasons for its decision to grant or deny recall and resentencing."  Section 1385, subdivision (a), likewise requires "[t]he reasons for the dismissal shall be stated orally on the record."  (See Cal. Rules of Court, rule 4.406(b)(7) ["Sentence choices that generally require a statement of a reason include" "[g]ranting relief under section 1385."].)

15

documented in his memorandum in support of resentencing or in CDCR's report.

As stated, the court acknowledged that Mattox was entitled to a "full resentencing" and Mattox submitted briefing and evidence asking the court to sentence him as a second strike offender. In the absence of evidence to the contrary, we presume the superior court considered all of the relevant factors and properly applied the law in reaching its resentencing decision, particularly where, as here, Mattox expressly raised the issue in his oral and written arguments. (See *In re Large*, *supra*, 41 Cal.4th at p. 551; see also *People v. Brugman* (2021) 62 Cal.App.5th 608, 638.)

To the extent Mattox argues the failure to provide a statement of reasons is itself prejudicial error, he has forfeited this claim. (See *People v. Scott* (1994) 9 Cal.4th 331, 353 (*Scott*) ["the waiver doctrine should apply to claims involving the trial court's failure to properly make or articulate its discretionary sentencing choices"]; see also *People v. Garcia* (2010) 185 Cal.App.4th 1203, 1218 ["'Claims of error relating to sentences "which, though otherwise permitted by law, were imposed *in a procedurally* or factually *flawed manner*" are forfeited on appeal if not first raised in the trial court.'"].) Mattox concedes he did not ask for a statement of reasons at this or any other hearing.

For the same reasons, we conclude that, examined in context, there is no ambiguity arising from the court's statement regarding the court's understanding of its discretion. The facts outlined above demonstrating the court's affirmative exercise of its informed decision distinguish this case from the authorities on which Mattox relies. In *People v. Lua* (2017) 10 Cal.App.5th

16

1004, 1021 (*Lua*), the superior court applied section 1385 to dismiss sentencing enhancements imposed under section 12022.1. But it erroneously stated that a 17-year sentence was the minimum sentence it could impose, creating an ambiguity regarding whether it understood it had discretion to dismiss other sentencing enhancements under section 1385 to further reduce the sentence. In *People v. Ochoa* (2020) 53 Cal.App.5th 841, 852-853, the trial court accepted evidence of youth-related mitigating factors, but only did so after it had imposed its sentence. Thus, the record did not show it understood these youth-related mitigating factors were necessary to its sentence. By contrast, the record here does not reveal any similar misunderstanding; the court stated it was conducting a "full resentencing" and received Mattox's evidence and argument relating to mitigating factors before rendering its sentence.

E.    *The Superior Court Did Not Abuse Its Discretion or Violate Mattox's Due Process Rights When It Declined to Sentence Him as a Second Strike Offender*

Mattox also argues the superior court abused its discretion and violated his due process rights when it purportedly ignored the evidence supporting dismissal of his prior strikes to sentence him as a second strike offender. According to Mattox, his individualized circumstances place him outside the spirit of the Three Strikes law and continued incarceration is no longer in the interest of justice.

17

1. *Striking a prior conviction under the Three Strikes law*

Because section 1172.1 directs a court to conduct a full resentencing of a defendant "in the same manner as if they had not previously been sentenced," a superior court may exercise its discretion to strike a prior conviction in furtherance of justice. (See §§ 1172.1, subd. (a)(1) and 1385, subd. (a); *Romero, supra*, 13 Cal.4th at pp. 529-530; *People v. Williams* (1998) 17 Cal.4th 148, 151-152.) "[I]n ruling whether to strike or vacate a prior serious and/or violent felony conviction allegation or finding under the Three Strikes law . . . or in reviewing such a ruling, the court . . . must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the [Three Strikes] scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (*Williams,* at p. 161.)

"'The striking of a prior serious felony conviction is not a routine matter. It is an extraordinary exercise of discretion, and is very much like setting aside a judgment of conviction after trial.'" (*People v. McGlothin* (1998) 67 Cal.App.4th 468, 474.) It is a conclusion "that an exception to the [sentencing] scheme should be made because, for articulable reasons which can withstand scrutiny for abuse, this defendant should be treated as though he actually fell outside the Three Strikes scheme." (*Ibid.*) "[A] court may not dismiss a strike solely for judicial convenience, in exchange for a guilty plea, or based on antipathy to the Three Strikes law. Instead, in determining whether to strike a prior

18

conviction, the trial court must look to 'factors intrinsic to the [Three Strikes] scheme.'" (*People v. Johnson* (2015) 61 Cal.4th 674, 688.)

"[T]he three strikes law not only establishes a sentencing norm, it carefully circumscribes the trial court's power to depart from this norm and requires the court to explicitly justify its decision to do so. In doing so, the law creates a strong presumption that any sentence that conforms to these sentencing norms is both rational and proper. [¶] In light of this presumption, a trial court will only abuse its discretion in failing to strike a prior felony conviction allegation in limited circumstances." (*Carmony, supra,* 33 Cal.4th at p. 378; see *Lua, supra*, 10 Cal.App.5th at p. 1020.) An abuse of discretion occurs, for example, where the trial court was not aware of its discretion to strike a prior conviction, where the court considered impermissible factors in declining to strike a prior conviction, or where imposing the Three Strikes law produces an arbitrary, capricious or patently absurd result under the facts of a particular case. (See *Carmony*, at p. 378; *Lua*, at p. 1020.)

"'[I]t is not enough to show that reasonable people might disagree about whether to strike one or more' prior conviction allegations. [Citation.] Where the record is silent [citation] or '[w]here the record demonstrates that the trial court balanced the relevant facts and reached an impartial decision in conformity with the spirit of the law, we shall affirm the trial court's ruling, even if we might have ruled differently in the first instance.'" (*Carmony, supra*, 33 Cal.4th at p. 378.) Only extraordinary circumstances where the relevant factors manifestly support the striking of a prior conviction will support a finding that a defendant falls outside the spirit of the Three Strikes law. (See

19

*ibid*.)  The burden is on the party challenging the sentence to clearly show the sentence was irrational or arbitrary.  (*Id*. at p. 376.)

> 2. *Mattox has failed to show extraordinary circumstances support striking nine prior convictions in order to sentence him as a second strike offender*

Mattox has not met his burden to show the superior court's failure to strike nine out of his 10 prior convictions was arbitrary, capricious or patently absurd.  (See *Carmony, supra*, 33 Cal.4th at p. 378.)  The record reflects Mattox has an extensive criminal history.  In 1979, he was convicted of involuntary manslaughter of the woman carrying his child.  By his own admission, he "went on a crime spree" after her death and his father's death.  From 1980 to 1981, he committed six robberies and attempted another robbery.  Shortly after his release from prison for the robberies and involuntary manslaughter, he was convicted of two counts of kidnapping and one count of robbery.  He was discharged from parole for these additional crimes in 2002.  He then committed the underlying burglary in 2008.  The record shows Mattox spent 22 years (from 1980 to 2002) either in custody or under supervision.  By contrast, he remained sober and gainfully employed for six years (from 2002 to 2008).  While commendable, as we previously concluded, "the relatively brief period of time defendant lived free from contact with the criminal justice system does not compel a finding that defendant should be treated as though he 'falls outside the spirit of the three strikes scheme.'" (*People v. Mattox, supra,* B213001.)  The superior court did not abuse its discretion when it declined to dismiss nine prior convictions to sentence Mattox as a second strike offender.

The record shows the court did not ignore the mitigating circumstances that Mattox identified: his past trauma, advanced age, and postconviction rehabilitation, as well as the remoteness of his prior strike convictions, and the circumstances of the underlying offense.  Section 1385 requires the court to consider these factors to determine whether to dismiss sentencing enhancements.  The court's decision to reduce Mattox's sentence by 15 years (i.e., dismissing all three five-year enhancements) shows it struck a balance between Mattox's criminal history and the mitigating factors.  (See *People v. Barber* (2020) 55 Cal.App.5th 787, 814 ["By refusing to reduce the offense or strike the enhancement, but granting Barber probation, the court believed it struck the proper balance."].)

Under these circumstances, we are bound to affirm the superior court's sentence because, on appeal, we may not reweigh the evidence before the superior court.  (See *Scott, supra,* 9 Cal.4th at p. 355 [appellate court may not "reweigh valid [sentencing] factors bearing on the decision below"]; accord, *Carmony, supra,* 33 Cal.4th at p. 374; see also *Romero, supra,* 13 Cal.4th at p. 531.)

We also reject Mattox's argument that the superior court violated his due process rights "because fundamental fairness requires that sentencing decisions be based on the court's informed discretion."  The record before us affirmatively discloses the superior court knew the scope of its discretion when it resentenced Mattox under section 1172.1.  The superior court's proper application of its discretion in this case does not amount to a violation of due process.  (See *Townsend v. Burke* (1948) 334 U.S. 736, 741 ["it is the careless or designed pronouncement of sentence on a foundation so extensively and materially false,

21

which the prisoner had no opportunity to correct by the services which counsel would provide, that renders the proceedings lacking in due process"]; *People v. Betterton* (1979) 93 Cal.App.3d 406, 413 [no denial of due process where the court followed legislatively determined sentencing procedure].)

After briefing was completed, Mattox's appointed counsel sent a letter notifying the court of Assembly Bill No. 600, which amended section 1172.1 effective January 1, 2024.  According to Mattox, this supplemental authority supports his argument the superior court failed to consider mitigating factors to strike his prior convictions.  Mattox relies on the following language from the preamble, which was not codified into the amended statute: "It is the further intent of the Legislature that courts have full discretion in resentencing proceedings pursuant to Section 1172.1 of the Penal Code to reconsider past decisions to impose prior strikes.  The list of factors considered in *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497, is not exhaustive.  Courts should consider Section 1385 of the Penal Code, postconviction factors, or any other evidence that continued incarceration is no longer in the interests of justice."  (Assem. Bill No. 600, Stats. 2023, ch. 446, § 1.)

Although "[l]egislative findings and statements of purpose in a statute's preamble can be illuminating if a statute is ambiguous[,] [citation] . . . a preamble is not binding in the interpretation of the statute.  Moreover, the preamble may not overturn the statute's language."  (*Yeager v. Blue Cross of California* (2009) 175 Cal.App.4th 1098, 1103; accord, *Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1118; see also *In re Abbigail A.* (2016) 1 Cal.5th 83, 94.)

22

In sum, Mattox's commitment to rehabilitation is laudable but he has not demonstrated the superior court abused its discretion by declining to sentence him as a second strike offender.

## DISPOSITION

The resentencing order and judgment are affirmed.


MARTINEZ, P. J.

We concur:


SEGAL, J.


STONE, J.

23